**Steven J. GENTILE, Plaintiff,**

**v.**

**Kevin A. NULTY, et al., Defendants.**

**No. 05 Civ. 7090(NRB).**

United States District Court,
S.D. New York.

Feb. 25, 2011.

Michael D. Diederich, Jr., Esq., Stony Point, NY, for Plaintiff.

Edward J. Phillips, Esq., Keane & Beane, P.C., White Plains, NY, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff Steven J. Gentile brought this action pursuant to 42 U.S.C. § 1983, against the Town of Orangetown ("the Town") and its Police Chief, Kevin A. Nulty, alleging violations under the First, Fifth and Fourteenth Amendments, the Health Insurance Portability and Accountability Act of 1996, New York General Municipal Law § 207–c, New York Civil Service Law § 71, and New York Public Health Law § 18. In a July 9, 2007 Or-

der, Judge Stephen C. Robinson dismissed all of plaintiff's claims except for his equal protection claim against the Town and his claim under New York Public Health Law § 18. *Gentile v. Nulty, et al.,* No. 05 Civ. 7090, slip op. at 8 (S.D.N.Y. July 9, 2007). After the parties conducted discovery, the defendants moved for summary judgment. The defendants' summary judgment motion was fully briefed on October 30, 2009 and filed on November 4, 2009. On November 12, 2010, this case was transferred to this Court from Judge Robinson following his resignation from the bench. Oral argument was held on January 24, 2011.

For the following reasons, defendants' summary judgment motion is granted.

## BACKGROUND

### I. Factual Background

The factual background of this case dates back nearly twenty years and has been comprehensively summarized in Magistrate Judge Mark D. Fox's Report and Recommendation on defendants' motion to dismiss, filed on August 18, 2006. Familiarity with that opinion is assumed and we do not repeat the majority of it here. Rather, we provide the following factual background insofar as it provides context for the sole remaining federal claim before

this Court—plaintiff's equal protection claim against the Town.

Plaintiff was hired by the Town as a police officer in 1989. Defs.' Rule 56.1 Statement ("Defs.' 56.1 Statement") at ¶ 7. On June 18, 1993, during a traffic stop, plaintiff was involved in a "gun battle" with four individuals who had just committed an armed bank robbery. Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl. Mem.") at 3; Defs.' 56.1 Statement at ¶ 8. After the June 1993 incident, plaintiff began receiving benefits under New York General Municipal Law § 207-c.[1] Defs.' 56.1 Statement at ¶ 11. Plaintiff claims that, as a result of the incident, he "incurred severe psychiatric injury, in the form of Post Traumatic Stress Disorder ("PTSD")." Pl. Mem. at 3.

Plaintiff was absent from work for several months after the June 1993 incident, and returned to active duty in November of that year. Defs.' 56.1 Statement at ¶¶ 9–10.[2] Plaintiff continued to work through December 31, 1995, when he was involved in another incident during a traffic stop. *Id.* at ¶ 11; Pl. Mem. at 3. Plaintiff claims that he "was again assaulted by criminals, causing injuries, human bites, and an aggravation of his PTSD." Pl. Mem. at 3.[3] Plaintiff alleges that, due to

1. N.Y. General Municipal Law § 207-c provides, in relevant part, that "[a]ny ... member of a police force of any ... town ... who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment shall be paid by the municipality by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition such municipality shall be liable for all medical treatment and hospital care necessitated by reason of such injury or illness."

2. Plaintiff disputes that he was absent during this five month period because he was "kept on call and subject to other requirements."

Pl.'s Rule 56.1 Counter–Statement in Opp'n to Summ. J. ("Pl.'s 56.1 Statement") at 1.

3. Defendant Nulty disputes plaintiff's characterization of the December 31, 2005, stating that plaintiff stopped a vehicle because the passenger, the driver's husband, was allegedly not wearing a seatbelt. Nulty states that neither the driver nor her husband spoke English or had prior criminal records, and that their two infant children were in the car. "For reasons that remain unclear, this seemingly benign situation escalated, and an altercation ensued when Plaintiff attempted to forcibly extricate one or both of the adults from the vehicle." Reply Aff. in Further Supp. of Mot. for Summ. J. ("Nulty Reply Aff.") at ¶ 2 n. 1.

the aggravation of his PTSD caused by this incident, his treating psychiatrist notified the Town that plaintiff was unable to return to work. *See* Defs.' 56.1 Statement, Ex. D at 21:1–20; Am. Compl. at ¶ 16.

Plaintiff has not worked since December 31, 1995 and has, except for a brief period of time, received line-of-duty disability benefits from the Town pursuant to N.Y. Gen. Mun. Law § 207–c. *See* Defs.' 56.1 Statement at ¶ 14; Pl.'s 56.1 Statement at 2.[4] In 1997, after the Town had stopped paying plaintiff his § 207–c benefits, plaintiff brought a proceeding pursuant to Article 78 of the New York Civil Practice Law Rules in Rockland County Supreme Court challenging the cessation of his § 207–c benefits. The state court ordered that the benefits be reinstated. *See* Defs.' 56.1 Statement at ¶ 16.

In 1996 and 1999, plaintiff filed lawsuits against the defendants in federal court. In the 1996 action, plaintiff alleged that Chief Nulty and the Town had retaliated against him for exercising his First Amendment rights. Plaintiff obtained a favorable jury verdict in this case. *Id.* at ¶ 15. In the 1999 action, plaintiff filed suit based on the failure to timely receive reimbursement of his medical expenses from the Town pursuant to § 207–c. This case was settled in 2004. *See id.* at ¶ 17.

On September 14, 2004, Town Supervisor Thom Kleiner sent plaintiff a letter, advising him that the Town Board would conduct a meeting on September 27, 2004 concerning his employment status. *Id.* at Ex. E. Plaintiff responded by letter one week later, requesting that the Town Board postpone the meeting and provide him with more information. *Id.* at Ex. F. In his response letter, the Town Supervisor stated that plaintiff's continuous absence from his job since December 31, 1995 constituted a separation of service under New York Civil Service Law § 71,[5] that his absence continued to encumber a position with the Town Police Department, and that the Town Board was considering the termination of plaintiff's employment status. *Id.* at Ex. G. At the Town Board meeting, which was held as scheduled on September 27th, plaintiff requested a copy of his medical reports and Chief Nulty's recommendations, and read a prepared statement. Plaintiff was unable to indicate when or if he might be able to return to duty. *Id.* at ¶¶ 24–25. The Town Board then adopted Resolution No. 638, terminating plaintiff's employment pursuant to N.Y. Civ. Serv. Law § 71. *Id.* at Ex. H.

Eight months later, in May of 2005, plaintiff received a letter from defendant Nulty, informing him that a decision had been made that plaintiff was no longer disabled as a result of his work-related injuries and, as a result, would no longer be eligible for § 207–c benefits. Am. Compl. at ¶¶ 116–17. In spite of this letter, plaintiff concedes in his papers (and again at oral argument on January 24,

---

4. Plaintiff states that "[o]n occasion, such benefits were not paid or were not timely paid" (Pl.'s 56.1 Statement at 2), and that his medical bills were not paid for a fourteen month period, leading to his filing of a federal lawsuit. Decl. of Pl. Steven Gentile Opposing Summ. J. ("Gentile Decl.") at ¶ 10.

5. N.Y. Civil Service Law § 71 provides, in relevant part, that "[w]here an employee has been separated from the service by reason of a disability resulting from an assault sustained in the course of his or her employment, he or she shall be entitled to a leave of absence for at least two years, unless his or her disability is of such a nature as to permanently incapacitate him or her for the performance of the duties of his or her position. Such employee may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination to be conducted by a medical officer selected for that purpose by such department or commission."

2011) that he has continued to receive § 207–c benefits to this day and that no hearing regarding his entitlement to § 207–c benefits has occurred. *See id.* at ¶ 123a.[6]

In his April 22, 2009 deposition, plaintiff testified that he was still disabled from working as a police officer because he was suffering from and had been diagnosed with PTSD. Defs.' 56.1 Statement, Ex. D at 21:1–8.

## II. Procedural Background

Plaintiff commenced the instant action on August 10, 2005. On November 4, 2005, defendants moved to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On March 10, 2006, plaintiff filed an Amended Complaint. On August 18, 2006 Magistrate Judge Fox issued a Report and Recommendation, recommending that defendants' motion to dismiss be granted in part and denied in part. In a July 9, 2007 Order, Judge Robinson adopted the Report and Recommendation in part, and sustained only the following two claims in plaintiff's amended complaint: (1) plaintiff's equal protection claim against the Town; and (2) plaintiff's claim under New York Public Health Law § 18. Defendants then filed a motion for summary judgment. That motion is presently before the Court.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The "mere

existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see also Quarles v. Gen. Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

On a motion for summary judgment, the initial burden rests with the moving party to make a prima facie showing that no material fact issues exist for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330–31, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this showing is made, "[t]o defeat summary judgment, the non-movant must produce specific facts" to rebut the movant's showing and to establish that there are material issues of fact requiring trial. *Wright v. Coughlin,* 132 F.3d 133, 137 (2d Cir.1998) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548). In determining whether a genuine issue of material fact exists, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. *See Fincher v. Depository Trust and Clearing Corp.,* 604 F.3d 712, 720 (2d Cir.2010).

### II. Plaintiff's Equal Protection Claims

■ The Equal Protection Clause requires that the government treat all simi-

---

**6.** According to a January 28, 2011 letter submission from the defendants, plaintiff is presently receiving a regular salary of $116,246 pursuant to § 207–c. Since he was terminated, plaintiff has received the same "longevity" pay and base pay raises provided to the active

members of the Town's police force. However, plaintiff's termination resulted in the discontinuance of other benefits, including retirement contributions, vacation accruals, holiday pay, medical insurance, uniform allowance and sick leave.

larly situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). In his July 9, 2007 Order, Judge Robinson sustained plaintiff's equal protection claim against the Town on the grounds that "[p]laintiff adequately alleges that the Town has never stopped paying into the Retirement System for any other employee to whom they were paying a salary, and never previously terminated an employee pursuant to Civil Service Law § 71 where they were receiving benefits under General Municipal Law § 207–c." *Gentile*, slip op. at 4. Judge Robinson further stated that "plaintiff's other allegations can be fairly read to say that he was treated differently in retaliation for his previous lawsuits against the town." *Id.*[7]

### A. "Class of One" and Selective Enforcement Claims

■ In sustaining plaintiff's equal protection claim, Judge Robinson relied on the "class of one" equal protection doctrine, which provides that a successful equal protection claim can be brought by a "class of one," "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the dif-

ference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir.2010) (internal quotation marks omitted). Under a similar theory of selective enforcement, a plaintiff may prevail on an equal protection claim by showing (1) that he was treated differently from others similarly situated, and (2) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (internal quotation marks omitted).

■ In 2008 (after Judge Robinson's opinion in this case), the Supreme Court held that "the class-of-one theory of equal protection does not apply in the public employment context." *Engquist v. Or. Dept. of Agric.*, 553 U.S. 591, 598, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). Here, where plaintiff was a public employee challenging employment decisions, *Engquist* controls. *See, e.g., Appel v. Spiridon*, 531 F.3d 138, 139–40 (2d Cir.2008) (holding that, in light of *Engquist*, "the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a 'class of one' theory of liability.")[8]

---

7. In his affidavit submitted to the Court, plaintiff adds that he was denied equal protection in the following ways: (1) he claims to be the only Town police officer deemed to be on a disability leave of absence under N.Y. Civ. Serv. Law § 71 while receiving benefits under N.Y. Gen. Mun. Law § 207–c; (2) he claims to be the only Town police officer to have had his § 207–c benefits arbitrarily taken away; (3) he claims that other Town police officers were routinely offered "light duty" when capable of such work; and (4) he claims that he is the only officer who was viewed as being disabled from work for purposes of terminating employment under § 71, and then deemed fit for work for purposes of denying benefits under § 207–c. *See* Decl. of Pl. Steven Gentile Opposing Summ. J. ("Gentile Aff.") at ¶ 13.

8. Plaintiff argues that he still has a valid "class of one" claim, notwithstanding *Engquist*, because "[t]he Town's efforts to selectively prosecute, and to create a rigged [N.Y. Gen. Mun. Law] § 207–c hearing, is not action which was done as a proprietor/employer (as in *Engquist*), but rather was action undertaken by the Town as a legislative body/regulator." Pl. Mem. at 16. With regard to plaintiff's argument concerning the § 207–c hearing, those claims have already been dismissed because they are not ripe. *See Gentile*, slip op. at 2. With regard to plaintiff's argument concerning selective enforcement of N.Y. Civ. Serv. Law § 71, the Town's decision to terminate its employee is a discretionary decision that falls within the "public employment context."

While some courts within this Circuit have held that the Supreme Court's decision in *Engquist* bars public employees from asserting selective enforcement claims,[9] others have generally treated selective enforcement and "class of one" theories "as distinct theories with distinct elements of proof." *Faulks v. City of Hartford,* 3:08–cv–270, 2010 WL 259076, at *7 (D.Conn. Jan. 19, 2010) (quoting *Sloup v. Loeffler,* 05–cv–1766, 2008 WL 3978208, at *14 n. 18 (E.D.N.Y. Aug. 21, 2008)).[10] While we doubt that selective enforcement claims by public employees have survived *Engquist,*[11] we nevertheless consider plaintiff's claim below. Because plaintiff is not similarly situated to any other officer, his selective enforcement claim fails.

■ Selective enforcement is a " 'murky corner of equal protection law in which there are surprisingly few cases.' " *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000) (quoting *LeClair v. Saunders* 627 F.2d 606, 608 (2d Cir.1980)). As stated above, in order to prevail on a selective enforcement claim, a plaintiff must show (1) that he was treated differently from others similarly situated, and (2) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cine SK8,* 507 F.3d at 790 (internal quotation marks omitted). "Generally, whether two entities are similarly situated is a factual issue that should be submitted to the jury. But this rule is not absolute and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Id.* (internal quotation marks and citation omitted).

### 1. "Similarly Situated" Analysis

"[D]emonstrating that a plaintiff has been treated differently from similarly situated individuals is 'the *sine qua non* of a ... selective enforcement violation.' "

9. *See, e.g., Emmerling v. Town of Richmond,* 09–CV–6418, 2010 WL 2998911, at *12 (W.D.N.Y. July 27, 2010) ("Plaintiff's 'selective enforcement' claim is barred by the Supreme Court's decision in *Engquist.*"); *see also Spanierman v. Hughes,* 576 F.Supp.2d 292, 307 (D.Conn.2008) ("Given the Supreme Court's decision in *Engquist,* whether a ... selective prosecution claim in the public employment context can survive is doubtful.").

10. In *Kamholtz v. Yates County,* 350 Fed. Appx. 589, 591 (2d Cir.2009), the Second Circuit recognized that there is a question as to whether selective enforcement claims in the public employment context survived *Engquist,* but did not decide the issue: "[E]ven assuming that appellant, a public employee, is not precluded from pursuing a selective enforcement claim, *see Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008), he nevertheless has failed to sufficiently state his claim."

11. In *Engquist,* the Supreme Court noted that "public employees typically have a variety of protections from just the sort of personnel actions about which [Plaintiff] complains, but the Equal Protection Clause is not one of them." *Engquist,* 553 U.S. at 609, 128 S.Ct. 2146. Here, plaintiff could have filed a petition for review pursuant Article 78 of the N.Y. C.P.L.R. Furthermore, N.Y. Civ. Serv. Law § 71 expressly provides that an "employee may, within one year after the termination of [his] disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination" and, if found to be "fit to perform the duties of his .... former position," he shall be reinstated to the position if is vacant. If the particular position is not vacant, the statute provides for other mechanisms through which the employee can regain employment. In the over six years since plaintiff was terminated, he has not applied to be reinstated. Rather, he states that his disability has not terminated. *See* January 24, 2011 Oral Argument Tr. ("Jan. 24 Tr.") at 3:4–3:8, 7:24–8:2.

*Goldfarb v. Town of West Hartford,* 474 F.Supp.2d 356, 368 (D.Conn.2007) (quoting *John Doe No. 1 v. Village Of Mamaroneck,* 462 F.Supp.2d 520, 555–56 (S.D.N.Y. 2006)). While it is clear that the determination of whether a plaintiff has been treated differently from similarly situated individuals is central to a court's analysis, courts are in some disagreement as to the meaning of "similarly situated" in the selective enforcement context. Whereas some courts have stated that "the standard for 'similarly situated' in a selective enforcement claim is the same as in a 'class of one' claim," (*Dones v. City of New York,* 07–Civ–3085, 2008 WL 2742108, at *7 (S.D.N.Y. July 9, 2008))[12], others have "employ[ed] the slightly different formulations set forth by the Second Circuit for each [type of] claim." *Vassallo v. Lando,* 591 F.Supp.2d 172, 184 n. 9 (E.D.N.Y. 2008).[13]

Courts that have found that "similarly situated" has the same meaning in the selective enforcement and "class of one" contexts have stated that "the standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are *prima facie* identical." *Kamholtz,* 2008 WL 5114964, at *5 (quoting *Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005) (internal quotation marks omitted)). "[T]he level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Id.* (quoting *Neilson,* 409 F.3d at 104). Thus, in order "to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person

could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010) (quoting *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir.2006) (internal quotation marks omitted)).

In contrast, courts that have distinguished between the meaning of "similarly situated" in selective enforcement and "class of one" claims have applied a standard that appears to be somewhat less demanding in the selective enforcement context. *See Frank Sloup and Crabs Unlimited, LLC v. Loeffler,* 745 F.Supp.2d 115, 130 (E.D.N.Y.2010) ("[I]f anything, the two standards differ in that the similarly situated standard for class of one claims is more stringent."). For example, the court in *Vassallo,* 591 F.Supp.2d at 184, n. 9, considered whether a plaintiff was "similarly situated [to his comparators] in all material respects." [14]

■ We need not decide which standard to apply because, under any of these standards, plaintiff has not shown that there is a question of fact as to whether he was similarly situated to any other officer in the Town.[15] As a preliminary matter, plaintiff has not provided evidence of a single officer who was absent for at least two years, let alone over eight years. Because

---

12. *See also Kamholtz v. Yates County,* 08–Civ–6210, 2008 WL 5114964, at *5 (W.D.N.Y. Dec 3, 2008) ("The similarly situated standard here [in the context of a selective enforcement claim] is the same as that for [ ] class-of-one claims."), *aff'd* 350 Fed.Appx. 589 (2d Cir. 2009).

13. *See also Faulks,* 2010 WL 259076, at *7.

14. *See also Yajure v. DiMarzo,* 130 F.Supp.2d 568, 572 (S.D.N.Y.2001) ("The test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent.")

15. As a result, any "class of one" claim also fails.

the applicable termination provisions under N.Y. Civ. Serv. Law § 71 only apply after a leave of absence of at least two years, any selective enforcement of that statute would require that an officer be absent long enough for the statute to even apply. Thus, plaintiff's argument that "[t]he Town has selectively enforced [N.Y. Civ. Serv. Law] § 71" (Pl. Mem. at 21) is without merit.

Plaintiff asserts that "[i]t appears to [him] that there were other Town police officers who were subject to termination under § 71, but were not, because they were permitted to work extensive light duty." Gentile Decl. at ¶ 33. But plaintiff fails to identify any such officer. Plaintiff only names Phil Tuzzolino, an officer who he claims "was allowed to work light-duty, due to an injury, for well over 10 years (perhaps over 15 years), by being permitted to work the desk and handle the department's computers. As far as I know, Officer Tuzzolino never filed any lawsuits or claimed unlawfulness by Chief Nulty or the Town." *Id.*

Plaintiff's allegations concerning Officer Tuzzolino remain speculative, apparently because plaintiff never requested any documents from Officer Tuzzolino's personnel file (or the file of any other Town Officer). *See* Reply Mem. of Law in Support of Defs.' Mot. for Summ. J. at 2.[16] In any event, plaintiff and Officer Tuzzolino are not similarly situated for a number of reasons, including (1) Officer Tuzzolino claimed to have suffered a work related injury in 1987 (Nulty Reply Aff. at ¶ 11), two years before plaintiff began working for the police department and eight years before plaintiff left work due to PTSD; (2) Officer Tuzzolino was absent from work for several months (*id.*), while plaintiff was absent from work for over eight years at the time of his termination; (3) Officer Tuzzolino injured his neck and shoulder in an automobile accident, while plaintiff suffered from PTSD; and (4) according to the affidavit of defendant Nulty, Officer Tuzzolino's "special assignment was not based upon any disability or job-related inquiry." *Id.* at ¶ 12. Rather, he "received this special assignment [of managing the Department's computer systems] because he wanted it, and because he showed a proficiency with computers at a time when the Department needed someone to fill this role." *Id.* Under these circumstances, no reasonable jury could find that plaintiff and Officer Tuzzolino were similarly situated, under any formulation of that standard.

Plaintiff does not identify any other officer to support his "light duty" equal protection claim. Rather, when asked at his deposition to identify other Town police officers who were treated more favorably than he was, plaintiff named a number of officers who had suffered an injury of one form or another, and stated that "[j]ust about anybody that I remember that's been out on a work-related injury [was treated more favorably.] ... [E]verybody has been out on an injury probably at least once in their career.... Of course sometimes we're talking about an injury that they're out of work for a week, sometimes we're talking about surgery and it's longer." Defs.' 56.1 Statement, Ex. D at 81:16–82:7. In light of plaintiff's statement that "everybody has been out on injury ... at least once," his argument that he is " 'similarly situated' to *all* injured Town police officers," (Pl. Mem. 16) (emphasis added) lacks any merit.

At bottom, where plaintiff has identified no other officer who was absent for a period of time comparable to plaintiff's eight year absence, no other officer who was eligible for termination pursuant to

---

**16.** In his reply affidavit, defendant Nulty states that he is "advised that [p]laintff did not conduct any discovery concerning Officer Tuzzolino." Nulty Reply Aff. at ¶ 9.

N.Y. Civ. Serv. Law § 71, and no other officer who was on leave for PTSD, plaintiff cannot shown that he was treated differently than any other similarly situated individual.[17]

### B. Alleged Retaliation for the Exercise of First Amendment Rights

Plaintiff's equal protection claims fail for the independent reason that they rely on First Amendment claims that have already been dismissed. While, as Magistrate Judge Fox noted, the basis for an equal protection claim in the complaint is "far from clear" (Report and Recommendation at 31 [Dkt. No. 22]) it is apparent from plaintiff's opposition brief that his equal protection claims rely on his First Amendment claims.[18] Indeed, in setting forth the various ways in which he was allegedly denied equal protection, plaintiff states that the denial of equal protection was "a result of [his] having filed *lawsuits (of public concern)* against the Town." Gentile Aff. at ¶ 13 (emphasis added). Plaintiff further "attribute[]s the unequal treatment . . . to the fact that [he] successfully pursued federal litigation against the Town regarding federal rights, which lawsuits were of public interest and concern, and embarrassing to the Town." *Id.* at ¶ 14.

■ When a plaintiff's equal protection claims are based on alleged First Amendment violations, the former "coalesce [ ] with the latter." *Kempkes v. Downey,* 07–CV–1298, 2008 WL 852765, at *6 (S.D.N.Y. Mar. 31, 2008). "Where this is the case, the equal protection claim is dependent on the First Amendment claim; in other words where the First Amendment claim

---

**17.** In his brief (and throughout oral argument) plaintiff argues that he was not provided adequate notice before his termination, and that he was improperly terminated because he was never actually placed on a leave of absence. *See* Pl. Mem. at 11. Plaintiff's notice argument is really a due process claim, which was already dismissed by Judge Robinson. *See Gentile,* slip op. at 3–4. Plaintiff's argument that he was not placed on a leave of absence and thus was "terminated improperly under [N.Y. Civ. Serv. Law] § 71," is a claim about the application of § 71. This claim was also dismissed by Judge Robinson, who noted that plaintiff should have first set forth his claim by way of an Article 78 proceeding, which is governed by a four-month statute of limitations. *Id.* at 7. Because plaintiff brought the present action ten months after his termination, Judge Robinson dismissed plaintiff's § 71 claim. *Id.* While neither of the above claims are presently before the court, we add two observations. First, at oral argument, plaintiff's counsel took the position that plaintiff's claim is based on his failure to have received proper notice prior to termination. *See, e.g.,* Jan. 24 Tr. at 25:4–25:19. Thus, in order for a lack of notice to be the basis of an equal protection claim, plaintiff would have to have provided evidence of other officers who did receive the kind of notice that plaintiff claims he should have received.

Plaintiff has not done so. Second, we are not surprised that even this litigious plaintiff did not bring an Article 78 proceeding to advance his statutory argument that receipt of full salary and medical benefits under N.Y. Gen. Mun. Law § 207–c for a period of eight years for his service-related disability did not constitute a "leave of absence." Clearly by any common usage of language, plaintiff had been on an extended disability/medical leave.

**18.** *See, e.g.,* Pl. Mem. at 1 ("Plaintiff has been denied the equal protection of the law, because the Town has retaliated against him and others for seeking the assistance of the federal government . . . ."); *id.* at 6 (arguing that allegedly similarly situated officer, who "never filed any lawsuits or claimed unlawfulness by Chief Nulty or the Town," was treated differently); *id.* at 7 ("[T]he Town has singled Plaintiff out because of his opposition to the violation of federal rights, and his opposition to reprisal."); *id.* ("Plaintiff is part of a class of at least three Town police officers who have suffered reprisal for opposing the Town's violation of federally protected rights."); *id.* at 8 ("Plaintiff [was] clearly subjected to selectively adverse administrative proceedings because of hostility toward [his] being part of a class of public employees who presented *bona fide* petitions for redress.")

has failed, the equal protection claim fails, too." *Id. See also Cobb v. Pozzi,* 363 F.3d 89, 110 (2d Cir.2004) ("Due to the manner in which they have cast their contentions throughout this action, the plaintiffs' selective prosecution and retaliation claims 'coalesce.'") (quoting *African Trade & Info. Ctr., Inc. v. Abromaitis,* 294 F.3d 355, 362 (2d Cir.2002); *Sweeney v. Leone,* 3:05–cv–871, 2006 WL 2246372, at *11 (D.Conn. July 31, 2006)) ("The Court's holding that Plaintiff's speech is not constitutionally protected ... requires that summary judgment be granted on Plaintiff's selective enforcement claim, to the extent that the claim is based on alleged retaliation for his speech.")

Plaintiff does not address any of the above-cited case law.[19] Rather, plaintiff

argues that his "selective enforcement claim is based upon the Equal Protection Clause, not for merely one individual's denial of First Amendment rights...." Pl. Mem. at 19. But all equal protection claims based on an alleged retaliation for the violation of First Amendment rights are, of course, "based upon the Equal Protection Clause." Here, where plaintiff's First Amendment claims have already been dismissed, and plaintiff's equal protection claims are based on alleged retaliation for the exercise of his First Amendment rights, the two claims coalesce. As a result, plaintiff's contention that he "is part of a class of at least three Town police officers who have suffered reprisal for opposing the Town's violation of federally protected rights" (Pl. Mem. at 15) fails.[20]

19. Plaintiff contends that "[a]lthough [d]efendants would prefer to characterize plaintiff's federal lawsuits as solely falling under the First Amendment, the facts here clear that [sic] the Town has a pattern and practice of retaliating against its public employees after they filed federal lawsuits.... [T]his is impermissible because New York and federal law prohibits reprisal for asserting statutory and constitutional rights." Pl. Mem. at 18–19. But plaintiff's retaliation argument was the basis for his First Amendment claim, which Judge Robinson already dismissed on the grounds that "plaintiff's 1996 and 1999 lawsuits were not protected speech or petitions of government for purposes of the First Amendment in that they were clearly addressed at his own employment status, not at any issue of public concern." *Gentile,* slip op. at 5–6.

20. While we need not address plaintiff's "class of at least three" argument, we note that the majority of plaintiff's evidence on this issue would be inadmissible at trial. Plaintiff asserts, with almost no detail, that Officers Susan Lanoce and Edward Robertson both "experienced reprisal by the police administration of Chief Nulty after filing complaints of discrimination." Pl. Mem. at 7. According to defendant Nulty's affidavit, Officer Lanoce filed an Equal Employment Opportunity Commission ("EEOC") complaint against the Town because, after she took time off for her pregnancy, she was not promised her position in a particular program upon her return.

The Town settled her EEOC complaint by agreeing to reassign her to the program. Nulty Reply Aff. at ¶ 21. Similarly, Officer Robinson applied for § 207–c benefits after the Town had brought disciplinary charges against him. Robinson claimed that he had become psychologically disabled as a result of stress induced by the Town's filing of disciplinary charges. Chief Nulty further states that, because of Robinson's psychological impairment, Nulty required him to surrender his firearm and refrain from police duties. After his disciplinary hearing, at which he was found guilty, Officer Robinson resigned. *Id.* at ¶ 22. Other than the fact that plaintiff, Lanoce, and Robinson were all town officers, nothing in the record shows that they were similarly situated or supports plaintiff's assertion of a Town "pattern practice and policy" of denying equal protection to "citizens who exercise their First Amendment right to petition the federal government." Pl. Mem. at 8. While Lt. Lorraine Wetzel—the final member of the "class of at least three"—has provided a declaration in which she alleges retaliation for the filing of federal lawsuits, her claims were based on alleged gender discrimination, did not involve any absence from work, and did not implicate either N.Y. Civ. Serv. Law § 71, or N.Y. Gen. Mun. Law § 207–c. *See* Decl. of Lt. Lorraine Wetzel in Support of Steven Gentile. To the extent that plaintiff argues that Lt. Wetzel's declaration shows that the Town has a "policy, practice and

### III. State Law Claim

Plaintiff's remaining claim is brought under New York Public Health Law § 18. Because we have granted defendants summary judgment on plaintiff's federal equal protection claim, we decline to exercise supplemental jurisdiction over the remaining state law claim. 28 U.S.C. § 1367(c)(3).

### *CONCLUSION*

For the foregoing reasons, the defendants' motion for summary judgment is granted.

custom," (*see* Am. Compl. at ¶ 136a) of retaliation, the evidence, even if it were of similar conduct, falls short of the "persistent and widespread" conduct (*see Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 226 (2d Cir. 2004)) that could show a Town custom or policy. *See, e.g., Giaccio v. City of New York,* 308 Fed.Appx. 470, 471–72 (2d Cir.2009) (stating that four examples of conduct falls far short of establishing an official policy or custom).