Anthony MISSERE, Plaintiff,

v.

Joseph GROSS, in his individual capacity and as the Mayor of the Incorporated Village of Cornwall–on–Hudson, Incorporated Village of Cornwall–On–Hudson, Michael De Franco, Michael Kelly, Andrew Maroney, Robert Quillin, Peter Osinski, Horst Hoffman, in their capacities as Members of the Zoning Board of Appeals of the Incorporated Village of Cornwall–on–Hudson, William Lee in his capacity as Code Enforcement Officer of the Incorporated Village of Cornwall–on–Hudson, Raymond Yannone, Jr., and Storm King Associates, LLC, Defendants.

Case No. 09–CV–8183 (KMK).

United States District Court,
S.D. New York.

March 31, 2011.

Michael P. O'Connor, Esq., New City, NY, for Plaintiff.

Cynthia Dolan, Esq., Ostrer Rosenwasser LLP, Chester, NY, for Defendants Storm King Associates, LLC, and Raymond Yannone, Jr.

Terry August Rice, Esq., Rice & Amon, Suffern, NY, for Defendants Incorporated Village of Cornwall–on–Hudson, Joseph Gross, Andrew Maroney, Horst Hoffman, Michael De Franco, Michael Kelly, Peter Osinski, Robert Quillin, and William Lee.

## OPINION AND ORDER

KENNETH M. KARAS, District Judge:

Love thy neighbor,

And you will find your labor

A great deal easier,

Life'll be breezier

If you love thy neighbor.

-Bing Crosby, *Love Thy Neighbor* (1934)

Breezier *and* less litigious; if only the Parties in this case had taken Bing to heart. In this neighborhood dispute, Plaintiff Anthony Missere, the owner of property in the Village of Cornwall–on–Hudson, New York, sues the Village, the members of its Zoning Board of Appeals, its Mayor, and its Code Enforcement Officer (the "Village Defendants"), as well as the owners of an adjoining building, Raymond Yannone, Jr., and Storm King Associates, LLC (the "Storm King Defendants"). Missere alleges favoritism in the enforcement of the Village's zoning code and a conspiracy among these Defendants to deprive him of his property rights. The two sets of Defendants—the Village and its employees, and Yannone and Storm King Associates—have filed separate motions to dismiss Missere's complaint. For the reasons stated herein, the motions are granted.

1. Excerpts of the Village Code are attached as Exhibit B of the Rice Declaration. (Dkt. No. 30.) At the Court's request, the Village Defendants have submitted a complete copy of

## I. Background

### A. Facts

Missere's Complaint alleges the following facts, assumed to be true for purposes of deciding Defendants' motions. Missere owns two adjoining properties in the Village of Cornwall–on–Hudson (the "Village"), numbers 3–5 River Avenue ("3 River Ave.") and 7–9 River Avenue ("9 River Ave."). (Compl. ¶ 2.) Missere operates the Riverbank Restaurant ("Riverbank") at 3 River Ave. (*Id.* ¶ 11.) After acquiring 9 River Ave. in September 2007, Missere initiated plans to expand Riverbank into 9 River Ave.'s ground floor. (*Id.* ¶¶ 10, 12–13.) He began by filing a site plan application with the Village Planning Board on September 21, 2007. (*Id.* ¶ 12.) About the same time, Missere also filed an application to move his garbage storage area from the back yard of 3 River Ave., to 9 River Ave. (*Id.* ¶ 14.)

In the Village, the Central Business and Shopping District Zone ("CBS Zone") is a district carved out of the "SR Suburban Residential District." Cornwall-on Hudson, N.Y., Code § 172–9(A).[1] Restaurants are permitted uses within the CBS Zone, but not within the larger SR Suburban Residential District. (Compl. ¶ 13.) *See* Cornwall-on–Hudson, N.Y., Code §§ 172–8, 172–9 (describing permissible uses in the "SR Suburban Residential District" and "CBS Central Business and Shopping Subdistrict"). Missere's first site plan application was prepared by a surveyor who determined that 9 River Ave. was located within the CBS Zone. (*Id.* ¶ 13; Aff. in Opp'n to Defs.' Mot. to Dismiss Pl.'s Compl. ("Missere Aff.") (Dkt. No. 35) Ex. C (Cornwall–on–Hudson, N.Y., Zoning Map).) Missere's applications were also

the Village of Cornwall–on–Hudson's zoning law, Cornwall–on–Hudson, N.Y., Code ch. 172.

supported by a September 21, 2007 letter from the Village's former Code Enforcement Officer, Robert Gilmore, stating that 9 River Ave. "is located within the C.B.S. district" (the "Opinion Letter"). (Missere Aff. Ex. B; Compl. ¶ 15.)

Defendant Raymond Yannone, Jr., ("Yannone") is Manager of Storm King Associates, LLC ("Storm King") (collectively the "Storm King Defendants"). Storm King owns 2 Idlewild Avenue ("2 Idlewild Ave."), another property that physically adjoins 3 River Ave. There, Storm King operates a restaurant that competes with Riverbank. (*Id.* ¶¶ 36–37.) While Missere's applications to expand Riverbank were pending, Yannone allegedly lobbied against Missere's applications to local officials and local newspapers, claiming that Missere's properties were not within the CBS Zone. (*Id.* ¶ 17.) Also, while Missere's applications were pending, the Mayor of the Village, Defendant Joseph Gross ("Gross"), allegedly signed and certified an "Official Zoning Map" for the Village which erroneously indicated that *neither* 3 River Ave. nor 9 River Ave. was located in the CBS Zone. (*Id.* ¶ 16.) Gross and Yannone took these actions, Missere alleges, in order to defeat his application to expand the Riverbank to 9 River Ave. and to close down Missere's restaurant altogether. (*Id.*)

After his application to expand Riverbank was "adjourned" several times, the Planning Board on December 18, 2007 told Missere to get an "interpretation" of the Village zoning code from the Village Zoning Board of Appeals ("ZBA"). (*Id.* ¶¶ 17, 19.) When Missere did this, the ZBA informed him in January 2008 that it lacked jurisdiction to make such an "interpretation." (*Id.* ¶ 20.) Missere returned

to the Planning Board, which took no action and instead referred his application to the Village Board of Trustees. (*Id.* ¶ 21.) The Complaint does not specify what action the Board of Trustees took.

Meanwhile, Yannone filed an "appeal" of the Code Enforcement Officer's September 21, 2007 Opinion Letter, which stated the Officer's determination that 3 and 9 River Ave. were located within the CBS Zone, with the Village ZBA. (*Id.* ¶ 22.) The appeal was filed on January 23, 2008, over sixty days after the date of the Opinion Letter. (*Id.*) Missere alleges that the appeal was therefore untimely, *see* N.Y. Vill. Law § 7–712–a(5)(b) (providing that appeals to zoning boards of appeals "shall be taken within sixty days after the filing of" the challenged administrative action), but the ZBA heard it anyway and overturned the Code Enforcement Officer's decision on May 20, 2008, concluding that 9 River Ave. was not within the CBS Zone. (Compl. ¶¶ 23–25; Missere Aff. Ex. D (decision of ZBA following April 8, 2008 meeting, dated May 2008).)[2] Missere challenged this decision in an Article 78 proceeding in New York Supreme Court; in an October 7, 2008 decision, the court rejected Missere's contentions, holding that the ZBA's decision to hear Yannone's appeal was within its discretion and that the ZBA's outcome on the merits was not "arbitrary [ ]or capricious." (Defs.' Affirmation ("Dolan Aff.") (Dkt. No. 34) Ex. D, at 4 (copy of decision in *Missere v. Hoffman,* No. 6090/08 (N.Y.Sup.Ct. Oct. 7, 2008).)

In May 2009, Missere went back to the Village Board of Trustees to seek a zone change for 9 River Ave. (Compl. ¶ 26.) The Trustees referred Missere to the ZBA to apply for a variance. (*Id.* ¶ 27.) The

---

**2.** The ZBA concluded that the appeal had most likely been filed within sixty days of the date on which Yannone found out about the

Opinion Letter. (Missere Aff. Ex. D.) The ZBA's decision is discussed further *infra* section II.B.2.

ZBA rejected the variance application in June 2009 on the ground that the Board could only hear *appeals* of determinations of other administrative officers; the proper course was for Missere to apply for a building permit first, (*Id.* ¶ 28.) *See* N.Y. Vill. Law § 7–712–a(4) ("Unless otherwise provided by local law, the jurisdiction of the board of appeals shall be appellate only...."); Cornwall–on–Hudson, N.Y., Code § 172–59(B)(1) (noting that the "powers and duties" of the ZBA included "authoriz[ing], upon appeal in specific cases ... variance from the terms of [the Village zoning code]"). Missere did so. (Compl. ¶¶ 29–31.) The Complaint is vague about what happened next: Missere alleges that the resulting variance application was on the agenda for the ZBA's August 13, 2009 meeting, but the "application was not opened to a public meeting" due to a defect in the required public notice the Village had previously issued. (*Id.* ¶¶ 31–32.) Missere does not allege what happened to his variance application.

In the meantime, while Missere was pursuing his restaurant expansion, in January 2008 a new Code Enforcement Officer, Defendant William Lee, granted Storm King a Certificate of Occupancy to operate its restaurant at 2 Idlewild Ave. (*Id.* ¶¶ 38–39.) This Certificate of Occupancy was based on a November 13, 2007 Building Permit. (Dolan Aff. Ex. E, at 1 (copy of decision in *Missere v. Hoffman,* No. 6438/08 (N.Y.Sup.Ct. Oct. 27, 2008).) According to Missere, Storm King's application did not satisfy several of the requirements of the Village zoning code. (Compl. ¶ 38.) Among other things, Lee

had determined that Storm King's application to open a restaurant did not require a site plan approval. (*Id.*) Missere then discovered that Lee had issued six other Certificates of Occupancy to Yannone and Storm King on September 20, 2007.[3] Missere alleges that these Certificates were also improper, as they were based on expired Building Permits. (*Id.* ¶¶ 41–42.) When Missere appealed the Certificates of Occupancy to the ZBA, in April and May 2008, the ZBA concluded that only Missere's appeal of the January 2008 Certificate was timely. On the merits, the ZBA determined that Yannone's application did not need a site plan because a site plan for a restaurant at 2 Idlewild Ave. had been approved some ten years earlier in 1998 and no one had since objected to it. (*Id.* ¶¶ 38, 40, 43; Dolan Aff. Ex. E; Missere Aff. Ex. E (decision of ZBA following May 13, 2008 meeting dated May 2008); Reply Affirmation ("Dolan Reply Aff.") (Dkt. No. 33) Ex. B (minutes of May 13, 2008 ZBA meeting)).) When Missere appealed this ruling via a second Article 78 proceeding, the Supreme Court, in an October 27, 2008 decision, again dismissed his complaint, this time on the ground that any challenge to the November 13, 2007 Building Permit was untimely and that Missere's challenge to the Certificate itself was barred by laches. (Dolan Aff. Ex. E, at 2.)

The incident with the Certificate for 2 Idlewild Ave. was, Missere alleges, but one of a number of instances in which the Defendants "selectively waived" requirements of the Village zoning code for Yannone and Storm King. (Compl. ¶ 39.) Others included allowing Yannone and Storm

---

**3.** It is not clear from the Complaint whether these Certificates were issued for 2 Idlewild Ave. or for other properties. The Complaint alleges that the Village Defendants allowed the Storm King Defendants to operate certain businesses, including "apartments[,] ... an ice cream stand, a lumber storage yard and mill shop ... without obtaining the proper permits." (Compl. ¶ 39.) Presumably not all of these establishments were located at 2 Idlewild. Ave., but the Complaint is vague on that point. This opacity is a theme in Missere's Complaint generally.

King to use the 2 Idlewild Ave. property in various ways without obtaining the proper permits, including operating the "restaurant, apartments and an ice cream stand, a lumber storage yard and mill shop, parking of commercial and non-commercial vehicles, and construction storage" there (*id.*), displaying signs without permits, storing objects behind the property, having outdoor dining at the restaurant, and operating the restaurant "beyond the approved hours and days of operation," (*id.* ¶¶ 57–60). The Village was allegedly aware of Storm King's zoning code violations but has taken no action. (*Id.* ¶¶ 57, 61–62.) Meanwhile, the Village allegedly has targeted the Riverbank for inspections seeking to discover possible zoning code violations. (*Id.* ¶ 60.)

Then there is the fence between 3 River Ave. and 2 Idlewild Ave. "Although it is said that good fences make good neighbors, sometimes, they make messy lawsuits." *Bolduc v. Thompson,* 238 Or.App. 625, 245 P.3d 131, 132 (2010). In this case, Missere alleges that the Code Enforcement Officer on August 28, 2007, issued a building permit to Yannone and Storm King to build a six-foot-high fence along their property line. (Compl. ¶ 44.) Shortly afterwards, the Village "Building Inspector" voided the permit, noting that a site plan approval was needed. (*Id.* ¶¶ 45–46.) Missere alleges that Yannone then contacted the Mayor for help; the Mayor told Yannone that he should apply again, but cast his application as one for a "re-

placement" fence, which would not require site plan approval. (*Id.* ¶¶ 47–49.) Yannone's application was approved, and the fence installed. (*Id.* ¶¶ 50–51.) Missere raised a number of complaints to the Village regarding the fence, asserting that it was too high, situated improperly, a safety hazard, and that it cut off access between 3 River Ave. and 9 River Ave. and cut off 3 River Ave.'s easement rights across 2 Idlewild Ave. (*Id.* ¶¶ 51–52, 54.) On or about September 22, 2008, Defendant Lee ordered the fence taken down, finding that it was higher than permissible and not located on the correct property line, but Missere alleges that the Village has not taken any actions since then to have the fence removed. (*Id.* ¶¶ 53–55; Missere Aff. Ex. F (Letter from William A. Lee to Raymond Yannone, Jr. (Sept. 23, 2008).)

■ The Complaint contains three claims. First, Missere alleges that the Defendants deprived him of property without due process of law in violation of the Fourteenth Amendment to the Constitution. (Compl. ¶ 9.) The second cause of action is a claim for "selective enforcement of the zoning code" in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶ 35.) The third cause of action is brought against Mayor Gross specifically, but the Complaint simply incorporates the facts previously stated and alleges that Mayor Gross violated Missere's rights under the Fourteenth Amendment and 42 U.S.C. § 1983. (*Id.* ¶¶ 66–69.)[4] Missere seeks compensatory

---

4. This is the only mention of § 1983 in the Complaint, and the other claims invoke only the Fourteenth Amendment itself. "Although relief may at times be derived directly from the Constitution, when § 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not available." *Hubbard v. Hanley,* No. 09–CV–10265, 2010 WL 1914989, at *3 n. 3 (S.D.N.Y. May 12, 2010) (internal quotation marks omitted); *see*

*also Fenner v. City of New York,* 392 Fed. Appx. 892, 893 (2d Cir.2010) (noting that § 1983 displaces implied causes of action grounded directly in the Constitution for constitutional violations). Section 1983 indisputably provides a cause of action for violations of the Fourteenth Amendment, the basis of the Complaint's claims, *see Collins v. City of Harker Heights,* 503 U.S. 115, 119–20, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), so the

damages against all Defendants and punitive damages against Mayor Gross. (*Id.* ¶ 71.)

## B. Procedural History

Missere filed the present action on September 25, 2009. (Dkt. No. 1.) These motions were fully submitted on April 16, 2010. (Dkt. No. 37.)

## II. Discussion

## A. Standard of Review

▇▇▇ "On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiffs factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero,* 572 F.Supp.2d 463, 466 (S.D.N.Y.2008); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiffs favor.").[5]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration, citations, and internal quotation marks omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.,* and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2))).

---

Court will construe each claim as a § 1983 claim. *See Hubbard,* 2010 WL 1914989, at *3 n. 3.

**5.** The Storm King Defendants filed an Answer to the Complaint on November 16, 2009. (Verified Answer (Dkt. No. 17).) Their motion, filed on April 14, 2010, seeks relief pursuant to Rules 12(b)(1), 12(b)(6), and 12(h)(2), and asks for "judgment on the pleadings." (Defs.' Notice of Mot. to Dismiss (Dkt. No. 32).) "[A] motion to dismiss for failure to state a claim ... that is styled as arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contempo-*

*rary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001). Moreover, the Storm King Defendants' Answer asserted as an affirmative defense failure to state a claim (among others) (Verified Answer ¶ 39), and thus the defense was properly raised prior to the close of the pleadings, *see* Fed.R.Civ.P. 12(h)(2)(A) (allowing defense of failure to state a claim to be raised "in any pleading allowed or ordered under Rule 7(a)"). The issue is immaterial here, for even if the Court were to construe the Storm King Defendants' motion as one under Rule 12(c) rather than 12(b), a Rule 12(c) motion is governed by the "identical" standard of review as applies to a Rule 12(b)(6) motion. *Patel,* 259 F.3d at 126.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks omitted). "To be incorporated by reference, the [c]omplaint must make a clear, definite and substantial reference to the documents." *Thomas v. Westchester Cnty. Health Care Corp.,* 232 F.Supp.2d 273, 275 (S.D.N.Y.2002).

■ The Parties have submitted a number of exhibits and affidavits for the Court to consider with these motions, but the Court will not consider any of these that are not incorporated in or integral to the complaint, or that may not be the subject of judicial notice. *See Carione v. United States,* 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion, and thus … to convert the motion to one for summary judgment." (internal quotation marks omitted)). The Court has therefore considered the two letters from the Village Code Enforcement Officer that are specifically quoted in the Complaint. (Missere Aff. Exs. B, F.) The Court may also take judicial notice of all documents in the public record, including the decisions of the ZBA, the decisions of the Supreme Court in the Article 78 proceedings, and the provisions of the Village zoning code, that the Parties have submitted in affidavits with their motion papers. "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss

under Rule 12(b)(6)." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 75 (2d Cir.1998); *see also Soundview Assocs. v. Town of Riverhead,* 725 F.Supp.2d 320, 337 n. 4 (E.D.N.Y.2010) ("Pursuant to Federal Rule of Evidence 201, the [c]ourt is permitted to take judicial notice of provisions of the Riverhead Town Code on a motion to dismiss."); *DeMasi v. Benefico,* 567 F.Supp.2d 449, 457 (S.D.N.Y.2008) (noting that court could take judicial notice of decision in Article 78 proceeding); *Nw. Bypass Group v. U.S. Army Corps of Engineers,* 488 F.Supp.2d 22, 25–26 (D.N.H. 2007) (taking judicial notice of city zoning board's meeting and decision, and of minutes of zoning board's meeting where their genuineness and accuracy were not disputed); *Pesano v. Anderson,* No. 97–CV– 4049, 1999 WL 232037, at *1 (S.D.N.Y. Apr. 13, 1999) (taking judicial notice of the contents of budget resolutions enacted by town board). The Court will not consider the contents of the affidavits themselves. *See, e.g., Hoy v. Inc. Vill. of Bayville,* 765 F.Supp.2d 158, 163 & n. 3 (E.D.N.Y.2011).[6]

### B. Analysis

#### 1. Due Process Claim

Missere argues that the Complaint states a valid claim for deprivation of both procedural and substantive due process. (Pl.'s Mem. of Law in Opp'n to Defs.' Motions to Dismiss ("Pl.'s Mem.") (Dkt. No. 36) 16–17.) Specifically, Missere contends that he had a constitutionally protected interest in "expanding his restaurant" to 9 River Ave., and that Defendants' actions—among others, passing his applications from board to board and ruling that 9 River Ave. fell outside of the CBS Zone—deprived him of his right to do so. (*Id.* at 15.) Defendants seek dismissal of

---

**6.** Both sides have submitted such documents and neither has objected to the Court's taking judicial notice of their contents. *Cf.* Fed. R.Evid. 201(e).

this claim on numerous grounds, arguing among other things that the claim is not ripe, the claim is barred by collateral estoppel, and the Complaint fails to state a property interest.

### a. Ripeness

 Ripeness is a jurisdictional requirement, so the Court must address it first. *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir.2005).[7] In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Supreme Court set forth two independent ripeness requirements for a claim that an application of a zoning law effected a Taking under the Fifth Amendment. *See id.* at 347–48. Such claims are not ripe unless (1) the relevant public entity has rendered a final decision on the matter, and (2) the plaintiff has sought and failed to receive just compensation through an available state procedure. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir.2002); *see also Adrian v. Town of Yorktown*, 341 Fed.Appx. 699, 700 (2d Cir.2009) (summary order) (same). At least "prong one" of the *Williamson* analysis, the "final decision" or "finality" prong, is applicable to "equal protection and due process claims asserted in the context of land use challenges." *Dougher-*

ty, 282 F.3d at 88. It asks whether the plaintiff has received "a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations." *Murphy*, 402 F.3d at 348. In particular, a property owner must have submitted "at least one meaningful application for a variance," for, among other reasons, "a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes." *Id.*; *see also Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir.2003) (noting that constitutional ripeness requirement "prevents courts from ... constructing generalized legal rules unless the resolution of an actual dispute requires it").

 Missere concedes that his Complaint fails the finality prong of the *Williamson* ripeness test, because it does not allege that the Village rendered a final decision on his application for a "use variance" that would allow him to operate a restaurant at 9 River Ave. (Pl.'s Mem. 12–13; Compl. ¶¶ 31–32 (alleging only that Plaintiff's application was on the agenda of the ZBA on August 13, 2009, but that the meeting was not opened to the public).)[8] This ordinarily would require dismissal of Missere's due process claims: "Unless a court has a final decision before

---

7. "The question of ripeness raises issues of Article III's case or controversy requirement as well as prudential limitations on the exercise of judicial authority." *Bikur Cholim, Inc. v. Vill. of Suffern*, 664 F.Supp.2d 267, 274 (S.D.N.Y.2009) (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n. 7, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997)). Adherence to such limitations is particularly important in the context of disputes about local land use, as such conflicts should generally be resolved by local authorities. *See, e.g., Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir.1995) ("[F]ederal courts should not become zoning boards of appeal to review nonconstitutional land-use determinations by the

Circuit's many local legislative and administrative agencies." (alterations and internal quotation marks omitted)); *Homefront Org., Inc. v. Motz*, 570 F.Supp.2d 398, 400 (E.D.N.Y.2008) (noting importance of ripeness doctrine "in land use and zoning disputes which are quintessential local issues that, with certain limited exceptions, are properly left in the first instance to local bodies that are better equipped than federal courts to address and resolve such issues.").

8. No Party has advised the Court that these facts have changed since the Complaint was filed on September 25, 2009.

it, it cannot determine whether a claimant was deprived of property and whether the government conduct was arbitrary or capricious." *Southview Assocs. v. Bongartz*, 980 F.2d 84, 97 (2d Cir.1992). Instead, Missere relies on the futility exception to the ripeness requirement. (Pl.'s Mem. 12–13.) "A property owner ... will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile." *Murphy*, 402 F.3d at 349. This occurs when "a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.* Courts have interpreted this futility exception narrowly. *See S & R Dev. Estates, LLC v. Bass*, 588 F.Supp.2d 452, 463–64 (S.D.N.Y.2008); *RKO Del., Inc. v. City of New York*, No. 00–CV–2592, 2001 WL 1329060, at *4 (E.D.N.Y. Aug. 30, 2001).

▋ The exception is inapplicable here. First, the Village ZBA has the discretion to grant variances from the terms of the Village's zoning code. *See* Cornwall–on–Hudson, N.Y., Code § 172–59(B). Second, the sole basis supporting Missere's invocation of the futility exception is the Village's alleged failure to act over the two-year period during which he submitted his various applications. (Pl.'s Mem. 13,) Such a delay is not significant enough (and delay by itself may not be sufficient at all) to establish that the Village has "dug in its heels" on any further applications from Missere. *See Osborne v. Fernandez*, No. 06–CV–4127, 2009 WL 884697, at *6 (S.D.N.Y. Mar. 31, 2009) (collecting cases holding that futility exception was not established when delays lasted two, three, five, and even eight years); *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F.Supp.2d 142, 155 (E.D.N.Y. 2006) (holding two year delay insufficient to establish futility); *see also Homefront*

*Org., Inc. v. Motz*, 570 F.Supp.2d 398, 407 (E.D.N.Y.2008) (noting narrowness of futility exception, and that courts should consider factors such as defendants' hostility, obstructiveness, and delay, which must be considerable to establish futility). Moreover, although the Complaint alleges that the Village Defendants acted "with malice" in handling Missere's applications, (Compl. ¶ 33), the allegation is wholly conclusory and is insufficient to establish that awaiting a variance decision would be futile. *See, e.g., Osborne*, 2009 WL 884697, at *6 (rejecting futility claim based on allegations that "defendant decisionmakers were hostile to plaintiffs proposed development or act[ed] in bad faith"); *Country View Estates*, 452 F.Supp.2d at 154 (rejecting plaintiffs "conclusory assertions that defendants[ ] acted with malicious intent and bad faith in processing plaintiff's application in order to delay and obstruct the construction of plaintiff's ... development project"); *Goldfine v. Kelly*, 80 F.Supp.2d 153, 161 (S.D.N.Y.2000) (holding that plaintiff's allegations that defendant "failed to show up for site visits and misinterpreted [land use] [r]egulations in order to make development of [the property] more difficult" were insufficient to "invoke the narrow futility exception").

▋ Missere's due process claims must therefore be dismissed because they are unripe. Missere's Equal Protection claims, however, satisfy the *Williamson* prong-one analysis because Missere alleges that he challenged certain Certificates of Occupancy issued for 2 Idlewild Ave., which Missere alleges constituted selective enforcement of the Village zoning code, with the ZBA and in a subsequent Article 78 proceeding and received final decisions from each. (Compl. ¶¶ 38–43.) As to the fence, the Complaint alleges that Defendant Lee found the fence out of compliance with the terms of its approval. (*Id.* ¶¶ 53–

54; Defs. Raymond Yannone, Jr. & Storm King Assocs., LLC's Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. ("Storm King Defs.' Mem.") (Dkt. No. 37) 10 (conceding the Village issued the Storm King Defendants a "violation concerning the construction of the fence").) Even though Missere alleges that no one has yet removed the fence, Defendants do not argue what further action Missere could have taken to acquire a "final decision" from the Village. Thus, the Court finds the Equal Protection claims to be ripe.

### b. Property Interest

 Even if Missere could satisfy the ripeness requirement, his due process claims must be dismissed on the merits because the Complaint fails to allege the deprivation of a constitutionally protected property interest. To allege a § 1983 claim based on the denial of either procedural or substantive due process a plaintiff must allege a federally protectable property interest. *See Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 34 (2d Cir.2010); *see also Nemeth v. Vill. of Hancock*, No. 10–CV–1161, 2011 WL 56063, at *3 (N.D.N.Y. Jan. 7, 2011) (same in the land use context); *Lamar Adver. of Penn, LLC v. Pitman*, 573 F.Supp.2d 700, 706 (N.D.N.Y. 2008) (same); *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne*, No. 02–CV–2989, 2006 WL 572855, at *5 (E.D.N.Y. Mar. 6, 2006) (same). The requirements of a protectable property interest are fairly straightforward:

It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner. A plaintiff has a legitimate claim of entitlement to a particular benefit if, absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted. Where a local regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit. An entitlement to a benefit arises only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit. The issue of whether an individual has such a property interest is a question of law since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise.

*Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir.1994) (alterations, citations, and internal quotation marks omitted); *see also Harrington*, 607 F.3d at 34–35; *Soundview Assocs.*, 725 F.Supp.2d at 334.[9] Second Circuit precedent "makes clear that the analysis of whether a landowner has a protectable property interest in a particular land use benefit focuses on the degree of official discretion and not on the probability of its favorable exercise." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 154 (2d Cir.2006) (internal quotation marks omitted).

9. The analysis is different when a plaintiff is issued a permit that is then revoked. In such cases the "clear entitlement" test is inapplicable because a permit, once issued, is "unquestionably" property of the holder. *Soundview Assocs.*, 725 F.Supp.2d at 334 (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 379 (2d Cir.1995)). This situation is not alleged here, because Missere does not suggest that he was ever granted a permit to expand his restaurant to 9 River Ave. that was then revoked. Although the Code Enforcement Officer initially thought 9 River Ave. was within the CBS Zone (Missere Aff. Ex. B), that opinion (which was overturned by the ZBA) did not amount to a permit to expand the Riverbank because, as discussed *infra*, expansion also required a site plan approval.

The asserted property interest is Missere's ability to expand his restaurant into 9 River Ave. (Pl.'s Mem. 15.) Missere's ability to do that depends on either: 1) 9 River Ave.'s inclusion in the CBS Zone; or 2) the ZBA's granting of a variance to allow Missere to operate a restaurant on a property outside of that zone. Moreover, even if 9 River Ave. were within the CBS Zone, a restaurant would only be *permitted* there upon the Village's review and approval of a site plan.[10] *See* Cornwall–on–Hudson, N.Y., Code § 172–9(B) (listing "[p]ermitted uses upon site plan review and approval" in CBS Zone). It is clear from the Village code that Missere had no "entitlement" to a variance because the ZBA's authority to grant them is discretionary. *Id.* § 172–59(B)(1) (authorizing the ZBA to grant variances "as will not be contrary to the public interest where, owing to exceptional and extraordinary circumstances, there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of [the zoning code]"); *see also Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996) (holding that plaintiff lacked property interest in variance where zoning board held "discretionary authority" to grant them according to broad "guiding principles" and "general standards" (alterations and internal quotation marks omitted)); *Lamar Adver.*, 573 F.Supp.2d at 707 ("It is well established under New York Law that 'local zoning boards have broad discretion in considering applications for variances.'" (alteration omitted)) (quoting *Ifrah v. Utschig*, 98 N.Y.2d 304, 746 N.Y.S.2d 667, 774 N.E.2d 732, 734 (2002)); *Bull Run Properties, LLC v. Town of Cornwall Zoning Bd. of Appeals*, 50 A.D.3d 683, 855 N.Y.S.2d 585, 586 (2008) (same).

■■■■ The Court will assume without deciding that Missere is not precluded from relitigating the issue of whether 9 River Ave. is in fact within the CBS Zone, an issue that was decided unfavorably to Missere in the Supreme Court's October 7, 2008 decision on Missere's Article 78 application. (Dolan Aff. Ex. D.)[11] (Missere ap-

---

10. Missere also claims he could have been able to expand his restaurant to 9 River Ave. by means of a "Zone change." (Pl.'s Mem. 19.) The boundaries of the Village's zones are set by the Village's official zoning map. *See* Cornwall–on–Hudson, N.Y., Code § 172–4(A). Missere makes no argument or allegation suggesting he has an "entitlement" to an alteration of the Village's zoning map, much less does he explain why it is plausible that the Village would not retain "discretion" over such a change. *Gagliardi*, 18 F.3d at 192.

11. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). "A judgment pursuant to Article 78 may preclude relitigation of issues already decided in that earlier judgment." *LaFleur v. Whitman*, 300 F.3d 256, 272 (2d Cir.2002).

> [U]nder New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which the party had a full and fair opportunity to litigate. Additionally, the issue that was raised previously must be decisive of the present action.

*Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir.2003) (citations and internal quotation marks omitted). An issue is "'decisive in the present action' if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Id.* at 332 (holding that administrative finding that arrestee struck police officer was not "decisive" of arrestee's excessive force claim).

Whether Village officials properly determined that 9 River Ave. is located within the CBS Zone was the central issue of the October 7, 2008 Article 78 decision. There can be no question that it is the identical issue to that raised here, that it was actually and necessarily decided, and that Missere had a full and fair opportunity to litigate in state court.

parently did not appeal this decision.) Even so, it is not sufficient to operate a restaurant in Cornwall–on–Hudson for the property in question merely to sit within the CBS Zone. The Village Code makes abundantly clear that the Village Planning Board has broad discretion to approve or disapprove a site plan application, which is required for all uses within the CBS Zone.

> In considering and acting upon any site plan, the Planning Board shall consider the site layout and overall appearance of all buildings in the proposed development so that they will have a harmonious relationship with the existing or permitted development of contiguous land and of adjacent neighborhoods; so that they will have no material adverse effect upon the desirability of such neighborhoods; and so that the purpose and intent of this chapter will be met, to the end that the value of buildings will be conserved and the most appropriate use of land will be encouraged.

Cornwall–on–Hudson, N.Y., Code § 172–34. The Planning Board also has discretion to approve or disapprove of "any CBS Subdistrict use" based on quintessentially subjective criteria:

> In approving any CBS Subdistrict use, the Planning Board shall take into consideration the public health, safety and welfare and the comfort and convenience and moral standards of the public in general and of the residents of the immediate neighborhood in particular.

*Id.* § 172–9(E)(1)(i). Missere therefore cannot, as a matter of law, demonstrate an "entitlement" to the property interest of using 9 River Ave. as a restaurant. *See*

---

Missere does allege that the Village officials relied on a "fraudulent and erroneous" zoning map (Compl. ¶ 16), but Missere had ample opportunity to raise this both during the Article 78 proceeding and, if the Supreme Court had also relied on the erroneous map, in an appeal of the Article 78 proceeding—which Missere never brought.

The question is whether the Supreme Court's decision is "decisive" of this action. As a purely formal matter, 9 River Ave.'s position within the CBS Zone is not *decisive* (i.e., dispositive "without more") of the due process claims because Missere could theoretically still have demonstrated a property interest if he had an entitlement to a variance—if, for instance, it were the case that the ZBA had no discretion whether or not to grant variances to operate restaurants outside the CBS Zone. *See Hoy,* 765 F.Supp.2d at 167 (noting that issue was not "decisive" of action because "in order to grant the plaintiffs relief," the court was "not required to make … a finding that would directly conflict with … the state court's decision"). But that is clearly not the case on the actual facts here, and absent an entitlement to a variance, Missere's due process claims depend on the location of 9 River Ave. within the CBS Zone, a prerequisite to his ability to operate a restaurant there.

The Court has encountered one case construing New York's requirement that the issue be "decisive of the present action" that suggests that where the issue was dispositive of one theory of a claim but not another, collateral estoppel does not bar the *claim* from going forward. *See Sandler v. Simoes,* 609 F.Supp.2d 293, 301–02 (E.D.N.Y.2009) (where prior state court judgment determined that particular statement was statement of opinion, plaintiff's libel claims in federal court, which relied on that statement *and others,* could go forward, but federal court did not address the statement at issue in the state court's decision in dismissing on the merits). But *Sandler* does not expressly hold that the party is not precluded from relitigating the precise *issue* that was decided in state court, even when that issue would not technically "decide" the claim. Out of an abundance of caution, therefore, the Court assumes the Article 78 decision's finding that 9 River Ave. was not located within the CBS Zone is not "decisive" to the present action—because it does not wholly resolve the question whether Missere alleges a cognizable property interest—and therefore the decision may not be given collateral estoppel effect for that purpose.

*Gagliardi*, 18 F.3d at 192–93 & n. 2 (noting that town code provision requiring site plans to take into account "public health, safety and general welfare, the impact of the proposed use on adjacent land uses, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular" afforded the town "broad discretion" in granting site plan applications (internal quotation marks omitted)); *see also Christian v. Town of Riga*, 649 F.Supp.2d 84, 97–98 (W.D.N.Y.2009) (holding that plaintiff lacked property interest in building permit because town building inspector had discretion to decide whether application conformed to general standards in town code); *Donovan Realty, LLC v. Davis*, No. 07–CV–905, 2009 WL 1473479, at *5 (N.D.N.Y. May 27, 2009) (holding that property owner failed to prove the existence of constitutionally protected property interest in modification to site plan because two authorities had "vast dis-

cretion" in approving such modifications); *Tara Circle, Inc. v. Bifano*, No. 95–CV–6522, 1997 WL 399683, at *10 n. 3 (S.D.N.Y. July 15, 1997) (noting that plaintiffs lacked property interest in special permit where village board could authorize their issuance according to conditions and standards set forth in village code); *cf. Koncelik v. Town of E. Hampton*, 781 F.Supp. 152, 157 (E.D.N.Y.1991) (holding that plaintiffs held property interest in approval of subdivision application because application complied with all statutory and local requirements and planning board lacked discretion to impose additional conditions on application). This is so even if, as Missere argues, it would have been very likely that a proper exercise of the Planning Board's discretion would have resulted in the approval of the site plan application. *See Clubside*, 468 F.3d at 154.

The due process claims must therefore be dismissed.[12]

12. Defendants raise a number of other problems with the due process claims. For example, they contend that Missere cannot state a procedural due process claim because adequate state administrative and judicial remedies are available. *Cf., e.g., Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir.1996) (holding that an Article 78 proceeding was an "adequate postdeprivation remedy" for a contractor alleging deprivation of its property interest in eligibility for city contracts). They also argue that Missere's substantive due process claim is deficient because none of the acts alleged in the Complaint "shock the conscience," and is barred because Missere also asserts an Equal Protection claim. (Vill. Defs.' Mem. of Law in Supp. of Mot. to Dismiss Compl. ("Vill. Defs.' Mem.") (Dkt. No. 30–5) 10–14.) *See Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir.2001) (noting that "substantive due process does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit. Its standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental au-

thority," and holding that allegation that village board made incorrect determination under state law did not amount to violation of this standard); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir.1999) ("Arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause.").

It is also worth pointing out that the October 7, 2008 Article 78 proceeding addressing Missere's appeal of the ZBA's decision concluded that the ZBA's action "had a rational basis, and was not arbitrary and capricious." (Dolan Aff. Ex, D, at 3 (alteration and internal quotation marks omitted)) Whether the ZBA acted arbitrarily and capriciously was thus an issue necessarily litigated and decided in the Article 78 proceeding, *see* N.Y. C.P.L.R. § 7803 (listing "questions that may be raised" in an Article 78 proceeding), and if the ZBA's action was *not* "arbitrary or capricious" then *a fortiori* it could not constitute "a gross abuse of governmental authority," *Harlen Assocs.*, 273 F.3d at 505. *See, e.g., T.S. Haulers,*

## 2. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike. *See City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). A plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or "class of one." *See Cobb v. Pozzi,* 363 F.3d 89, 109–10 (2d Cir.2004) (distinguishing "selective prosecution" and "class of one" Equal Protection claims). Here, it is unclear which theory Plaintiff is adopting. (Pl.'s Mem. 22–25 (describing elements of both).) The two are treated (at least formally) as separate claims in the Second Circuit. *See Casciani v. Nesbitt,* 392 Fed. Appx. 887, 888 (2d Cir.2010) (summary order); *Cobb,* 363 F.3d at 109–10; *Gentile v. Nulty,* 769 F.Supp.2d 573, 579 (S.D.N.Y. 2011) (noting that courts in the Second Circuit "have generally treated selective enforcement and class of one theories as distinct theories with distinct elements of proof." (internal quotation marks omitted)).

To state a claim for selective enforcement, a plaintiff must allege facts supporting a conclusion that 1) he was "treated differently from other similarly situated" comparators, and 2) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 790 (2d Cir.2007) (internal quotation marks omitted); *see also Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995) (same). A class-of-one claim requires the plaintiff to allege facts showing that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135, 140 (2d Cir.2010) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam)).[13]

*Inc. v. Cardinale,* No. 09–CV–451, 2010 WL 4275310, at *7 (E.D.N.Y. Feb. 16, 2010) (holding that Article 78 proceeding's determination that denial of special permit was rational barred substantive due process claim based on same denial). Because Missere has failed to allege a protected property interest, the Court need not address these arguments further.

13. The Village Defendants argue that a plaintiff may not base a class-of-one claim on an exercise of discretionary governmental decisionmaking, citing *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008). (Vill. Defs.' Mem. 19–20.) *Engquist* held that a public employee could not state a class-of-one claim based on an employment decision made by her employer. *Engquist,* 553 U.S. at 607–09, 128 S.Ct. 2146. The Second Circuit recently rejected the Village Defendants' broad reading of *Engquist* in *Analytical Diagnostic Labs,* in which it held that "*Engquist* does not bar all class-of-one claims involving discretionary state action." *Analytical Diagnostic Labs,* 626 F.3d at 142. While *Analytical Diagnostic Labs* left open the possibility that *Engquist* could have applications outside the public employment context, the Second Circuit found it significant that in *Engquist,* the Supreme Court stressed the distinction between government acting as proprietor and manager of its own operations (e.g., as employer) and government acting as regulator or lawmaker. *See Id.* The Court will therefore assume that Missere's class-of-one claim is cognizable in this context, even though, as the Court has already noted, it involves an area of state action—land use regulation—in which the government exercises considerable discretion. *See Engquist,* 553 U.S. at 603, 128 S.Ct. 2146 ("There are some forms of state action ... which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.... In such situations, allowing a challenge based on

Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves. Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir.2010) (alterations, citations, and internal quotation marks omitted). Courts are split within the Second Circuit whether this "high degree of similarity" standard, which applies to class-of-one claims, also applies to selective enforcement claims. *See Wood v. Town of E. Hampton*, No. 08–CV–4197, 2010 WL 3924847, at *19–20 (E.D.N.Y. Sept. 30, 2010) (discussing cases). Courts utilizing a lower standard for selective enforcement claims have required plaintiffs to show that plaintiff and comparators were "similarly situated in all material respects," *Vassallo v. Lando*, 591 F.Supp.2d 172, 184 (E.D.N.Y.2008) (internal quotation marks omitted), or that "a prudent person, looking objectively at the incidents, would think them roughly equivalent," *Yajure v. DiMarzo*, 130 F.Supp.2d 568, 572 (S.D.N.Y.2001).[14] At least one court has combined these two standards. *See Local 621 v. City of New York*, No. 99–CV–9025, 2002 WL 31151355, at *6 (S.D.N.Y. Sept. 26, 2002). Under any applicable test, the plaintiff must allege facts showing that he is similarly situated to other persons with respect to the specific incident or incidents that are alleged to be examples of differential treatment. *See, e.g., Vassallo*, 591 F.Supp.2d at 184 (noting that plaintiff and comparator must be similarly situated in "all material respects" (internal quotation marks omitted)).[15]

■■■ Read in the light most favorable to Missere, the Complaint alleges up to six different incidents or sets of occurrences that Missere says amount to selective treatment between himself and the Storm King Defendants. First, Missere alleges that while his application to expand River-

---

the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.").

**14.** *Vassallo* took this language from *Sebold v. City of Middletown*, No. 05–CV–1205, 2007 WL 2782527 (D.Conn. Sept. 21, 2007), which in turn quoted *Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir.2000). *See Sebold*, 2007 WL 2782527, at *26 (quoting *Graham*, 230 F.3d at 39). *Graham* involved the standard for showing that an employee was "similarly situated" to another employee for Title VII purposes. *See Graham*, 230 F.3d at 39. *Yajure* cited *Penlyn Development Corp. v. Incorporated Village of Lloyd Harbor*, 51 F.Supp.2d 255 (E.D.N.Y.1999), which in turn relied on *Dartmouth Review v. Dartmouth College*, 889 F.2d 13 (1st Cir.1989), a case involving a claim under 42 U.S.C. § 1981. *See Dart-*

*mouth Review*, 889 F.2d at 19, *abrogated on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir.2004).

**15.** Missere mistakenly relies on the statement in *DeMuria v. Hawkes*, 328 F.3d 704 (2d Cir. 2003) that a plaintiff alleging a class-of-one claim need not "identify in her complaint actual instances where others have been treated differently for the purposes of equal protection." *DeMuria*, 328 F.3d at 707. (Pl.'s Mem. 24.) The Second Circuit has since held that the *DeMuria* standard is incompatible with *Twombly* and *Iqbal* and that equal protection claims requiring allegations of disparate treatment of similarly situated persons are subject to those cases. *See Ruston*, 610 F.3d at 59 ("We hold that the pleading standard set out in *Iqbal* supersedes the 'general allegation' deemed sufficient in *DeMuria*").

bank to 9 River Ave. was being "bounced from one [Village] Board to another," the Storm King Defendants were issued a Certificate of Occupancy to operate their restaurant at 2 Idlewild Ave., even though their application for a building permit allegedly failed to comply with the requirements of the zoning code. (Compl. ¶ 38.) Second, when Missere challenged this Certificate of Occupancy and other, earlier issued ones for 2 Idlewild Ave. that he discovered via a FOIA request, the ZBA concluded that most of Missere's appeals were untimely, while it heard and decided Yannone's contemporaneous, but allegedly untimely, appeal of the Code Enforcement Officer's September 20, 2007 Opinion Letter stating that 9 River Ave. was within the CBS Zone. (*Id.* ¶ 40.) Third, Missere alleges that those earlier Certificates of Occupancy were each deficient because they were issued on expired building permits, and were approved without site plans. (*Id.* ¶ 42.) Fourth, Missere appears to believe that the Village's permitting the fence to be built and remain standing constitutes an instance of selective enforcement (*Id.* ¶ 52, 56.) Fifth, Missere alleges that while the Storm King Defendants were permitted to have outdoor dining at their restaurant without site plan approval, Missere was forced to get approval for outdoor dining at his restaurant. (*Id.* ¶ 58.) Finally, Missere alleges that the Storm King Defendants have been allowed to do a number of other things on

their property or on public property, including operating certain businesses, storing various objects, and running their restaurant beyond its approved hours and days, all in violation of the zoning code, all while the Village Code Enforcement Officer, Defendant Lee, has targeted Missere for "inspections." (*Id.* ¶¶ 39, 57, 59, 60.)

Even taking all the facts alleged in the Complaint as true, none of the incidents Missere cites supports an Equal Protection claim (either on a selective enforcement or class-of-one theory) because they are either inadequately pled or insufficient as a matter of law.[16]

First, the Complaint itself and documents the Court may consider reveal that 2 Idlewild Ave. was not similarly situated to Missere's properties in at least two material respects: there was never any dispute that it fell within the CBS Zone, and, as the ZBA decided in May 2008, there was some evidence that a prior site plan was approved for 2 Idlewild Ave. in 1998 that allowed a restaurant there. (Compl. ¶ 38; Missere Aff. Ex. E; Dolan Reply Aff. Ex. B.) It is unsurprising, therefore, that Missere faced greater hurdles in operating a restaurant at 9 River Ave., where there was a controversy surrounding whether a restaurant was a use authorized by the zoning code, than did Yannone at 2 Idlewild Ave., where a restaurant was concededly allowed. *Cf. Merry Charters, LLC*

16. Contrary to the Village Defendants' suggestion (Vill. Defs.' Mem. 16), the identification of only one comparator is not necessarily a problem for Missere at the pleading stage. *See, e.g., Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 406–07 (7th Cir.2007) (noting, in the context of a § 1981 retaliation claim, that "[a] single comparator will do; numerosity is not required."), *aff'd,* 553 U.S. 442, 128 S.Ct. 1951, 170 L.Ed.2d 864 (2008); *cf. Carter v. Md. Aviation Admin.,* No. 04–CV–3065, 2005 WL 1075328, at *4 n. 1 (D.Md. May 6, 2005) (holding one comparator enough to make a

prima facie case under Title VII). However, if this claim were to go further, at summary judgment Defendants could point to other regulated entities in the town who were also treated differently from the Storm King Defendants but the same as Missere. *See Simpson v. Kay Jewelers,* 142 F.3d 639, 642 (3d Cir.1998) ("[A] plaintiff does not create an issue of fact merely by selectively choosing a single comparator who was allegedly treated more favorably, while ignoring a significant group of comparators who were treated equally to her.").

*v. Town of Stonington,* 342 F.Supp.2d 69, 70, 76 (D.Conn.2004) (holding that two properties that were governed by different pre-existing rules regarding their use were not similarly situated for equal protection purposes).

 Second, Missere is precluded by the Article 78 proceedings from arguing that he and Yannone were similarly situated with respect to their appeals to the ZBA. New York Village Law § 7–712–a allows an appeal of a decision or order of an administrative official to be brought "within sixty days after the filing of [such] order, requirement, decision, interpretation or determination." N.Y. Vill. Law § 7–712–a(5)(b). The New York courts have held that when a party seeks revocation of a permit issued to another, his time to appeal begins to run when he "reasonably became chargeable with notice of what had occurred in the transaction between [the applicant] and the Building Inspector, so long as no elements of undue delay or laches were present." *Highway Displays, Inc. v. Zoning Bd. of Appeals of Wappinger,* 32 A.D.2d 668, 300 N.Y.S.2d 605, 606 (1969) (citing *Pansa v. Damiano,* 14 N.Y.2d 356, 251 N.Y.S.2d 665, 200 N.E.2d 563, 564–65 (1964)); *see also Iacone v. Bldg. Dep't of Oyster Bay Cove Vill.,* 32 A.D.3d 1026, 821 N.Y.S.2d 654, 656 (2006) (noting that appeal was timely under Village Law § 7–712–a(5) because it was brought within sixty days after appellant "could . . . reasonably be charged with actual or constructive knowledge" of the issuance of the challenged building permit). The ZBA stated that Missere appealed from certificates of occupancy that were filed "well beyond" sixty days prior to the date he brought his appeal. (Missere Aff. Ex. E, at 2.) Yannone, however, appealed the Code Enforcement Officer's Opinion Letter regarding 9 River Ave., which was dated September 21, 2007, on or about January 23, 2008. (Dolan Aff. Ex. D, at 2.) It was not clear, the ZBA found, that this letter was filed at all. (Missere Aff. Ex. D, at 1.) Yannone filed his appeal shortly after a December 2007 meeting of the Village Planning Board at which the Board discussed Missere's application to expand his restaurant. (*Id.*) Missere does not allege any facts in his Complaint suggesting any of these findings was incorrect.

The lawfulness of the ZBA's decisions regarding the two sets of appeals was squarely presented to and decided by the Supreme Court in the Article 78 proceedings, in which Missere had a full and fair opportunity to litigate, barring any Equal Protection claim based upon the ZBA's actions. *See Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir.2003). The Supreme Court reviewed Missere's appeals from both sets of decisions and affirmed the ZBA's timeliness findings. In its October 7, 2008 decision, the Supreme Court noted that the ZBA correctly applied the law governing when the sixty-day clock begins to run, and held that the ZBA's decision to hear Yannone's appeal was "rationally based, and was neither arbitrary nor capricious." (Dolan Aff. Ex. D, at 3.) By contrast, in its October 27, 2008 decision, the Supreme Court affirmed the ZBA's decision holding Missere's appeals untimely and also concluded that they were barred by laches. (*Id.* Exh. E, at 2,) Thus, the ZBA was within its discretion to hear Yannone's appeal and correct to dismiss most of Missere's; the two appeals were not similar and the ZBA had a rational, indeed fully lawful, basis for its actions. Missere's claim—that the ZBA treated the two appeals differently for malicious reasons and without rational basis—would require this Court to hold the contrary, and is thus barred by collateral estoppel.

Third, Missere alleges that he was made to clear a procedural hurdle (acquiring a site plan approval) to have outdoor dining at his restaurant while Yannone was excused from this requirement. (Compl. ¶ 58.) However, the Complaint is nearly devoid of any further facts about this incident: the Complaint does not allege when the two restaurants sought outdoor dining, or under what circumstances; it does not allege whether the Storm King Defendants were "permitted to have outdoor dining at [their] restaurant" before or after the ZBA decided that there had been a prior 1998 site plan approval for 2 Idlewild Ave. (*Id.*); and it does not allege whether site plan approval is a normal requirement for outdoor dining. In fact, the Complaint's only other reference to outdoor dining suggests the Storm King Defendants and Missere were not similarly situated and that the alleged differential treatment had a rational basis: Missere alleges he sought approval from the Village to "construct a patio for outside dining," (*Id.* ¶ 62), while there is no allegation that the Storm King Defendants sought anything similar. Under the circumstances, the Court is unable to "draw [a] reasonable inference that the [Defendants] [are] liable for the misconduct alleged" based on Missere's threadbare allegation. *Iqbal,* 129 S.Ct. at 1949.

█ Most of Missere's remaining allegations—that the Storm King Defendants were issued Certificates of Occupancy, permitted to build the fence, operate businesses, and store materials on their property—are most naturally read as asserting no more than that the Storm King Defendants were allowed to make use of their property in ways that violated the zoning code. (Compl. ¶¶ 39, 40, 42, 52, 57, 59.) The Complaint does not allege that Missere tried to do the same things—storing objects on his property without permits, for instance (*Id.* ¶¶ 39, 57)—and was pre-

vented by the Village. *Cf. Hampton Bays Connections, Inc. v. Duffy,* 127 F.Supp.2d 364, 375 (E.D.N.Y.2001) (finding allegation that two real estate developers sought the exact same relief at the same time from the same town board but were treated differently adequate to allege the two entities were similarly situated). Missere cannot make out an Equal Protection claim, either on a selective enforcement or class-of-one theory, based *merely* on favorable treatment of another, because that does not establish that he also suffered any differential treatment. *See, e.g., Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.,* 192 F.Supp.2d 143, 158 (S.D.N.Y.2002) (holding that plaintiff that challenged city's grant of a building permit could not allege Equal Protection claim because plaintiff itself "was not 'treated' at all, selectively or otherwise"); *cf. LaTrieste Rest. v. Vill. of Port Chester,* 188 F.3d 65, 70 (2d Cir.1999) ("[M]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." (internal quotation marks omitted)).

The Complaint does allege that Missere has been subjected to unspecified "inspections by [Defendant] William Lee, at the direction of [Defendant] Joseph Gross, in a futile attempt to find Zoning Code violations at plaintiff's property." (Compl. ¶ 60.) Even assuming this nebulous and detail-free assertion were enough for the Court to infer that the Defendants treated Missere differently from similarly situated individuals—on the supposed theory that as a general matter the Village's zoning law was enforced as to him but not as to the Storm King Defendants—the Complaint would still fail to state a claim for selective enforcement because there are no allegations that would suggest the Defendants' conduct was "motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of

constitutional rights, or by a malicious or bad faith intent to injure" Missere. *Zahra*, 48 F.3d at 683 (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)). Missere does not claim to be a member of a protected class or to have exercised his constitutional rights, and only contends that the Complaint shows the Defendants acted out of "malice" and with "intent to financially injure the plaintiff." (Pl.'s Mem. 22.) As discussed *infra*, the Complaint alleges no conduct on the part of the Storm King Defendants in particular that is actionable under § 1983. With respect to the Village Defendants, the Complaint (generously read) contains only three facts that even come close to demonstrating malicious intent or bad faith: Missere alleges 1) that Mayor Gross certified the "erroneous" zoning map while Missere's initial application to expand Riverbank was pending (Compl. ¶ 16); 2) the Storm King Defendants' restaurant at 2 Idlewild Ave. "is in direct competition" with Riverbank (*Id.* ¶ 37); and 3) Missere had obtained permission from the Village "to construct a patio for outside dining, which was strenuously opposed by [Mayor Gross] and the administration of the Village of Cornwall–on–Hudson," (*Id.* ¶ 62).

None of these allegations if proven true would demonstrate that the Village Defendants acted with "malicious or bad faith intent to injure" Missere. The Complaint nowhere alleges any facts that would explain what motive the Village and Mayor might have had for trying to defeat Missere's applications or why the Mayor and other Village Defendants would have sided with Yannone over Missere in their various disputes, even if Yannone and Missere were competitors. The fact that the May-

or or certified the zoning map while Missere's application was pending does not in and of itself plausibly establish anything regarding the Mayor's intent.[17] *See Zahra*, 48 F.3d at 684 (evidence that violations were issued to the plaintiff nine days after plaintiff complained at a town board meeting did not by itself establish malicious or bad faith intent to injure the plaintiff). Moreover, to the extent the Complaint alleges mere favorable treatment of Yannone, that by itself does not demonstrate malice against Missere, but rather merely an intent to help Yannone. *See Hi Pockets*, 192 F.Supp.2d at 158 ("[N]one of [plaintiff's] allegations creates a claim that the [municipal] defendants intended *to injure* [plaintiff]; they merely allege that the [municipal] defendants intended to aid [another party] ...." (emphasis in original)). Finally, while the Complaint states that Defendant Gross opposed a previous project of Missere's, the inference from that alone that he acted with malice against Missere is wholly unsupported. *See In re Bausch & Lomb Inc. ERISA Litig.*, No. 06–CV–6297, 2008 WL 5234281, at *8 (W.D.N.Y. Dec. 12, 2008) (noting that a court may reject "unwarranted inferences and unsupported conclusions cast in the form of factual allegations" in ruling on a motion to dismiss (internal quotation marks omitted)).

■ Finally, the Complaint fails to allege facts suggesting an "extremely high degree of similarity" between Missere and the Storm King Defendants, as is necessary for a class-of-one claim to survive a motion to dismiss. *Ruston*, 610 F.3d at 59 (quoting *Clubside*, 468 F.3d at 159) (affirming dismissal of class-of-one claim via Rule 12(b)(6) motion). The injury involved in a

---

17. Notably, the Supreme Court in its October 7, 2008 decision affirmed the ZBA's determination, based on the allegedly erroneous map, that 9 River Ave. did not lie within the CBS Zone, holding that the ZBA's judgment was "rationally-based ... [and] neither arbitrary nor capricious." (Dolan Aff. Ex. D, at 4.)

class-of-one claim is intentional, arbitrary, and irrational discrimination, not a mere difference in outcomes. *See Vill. of Willowbrook*, 528 U.S. at 564, 120 S.Ct. 1073. The Complaint contains no facts whatsoever giving details regarding the alleged instances of differential enforcement of the zoning law from which the Court could draw a plausible inference that the differential treatment was not based on "a legitimate government policy" or that the Defendants did not "act[ ] on the basis of a mistake." *Ruston*, 610 F.3d at 60 (internal quotation marks omitted); *see also Iqbal*, 129 S.Ct. at 1949 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.... Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (alteration and internal quotation marks omitted)).

Under these circumstances, therefore, Missere's Equal Protection claims will be dismissed without prejudice to his ability to amend the Complaint.

### 3. Claims Against Storm King Defendants

Finally, even if Missere had stated a claim against the Village Defendants, the Court would have to dismiss the claims against the Storm King Defendants because, with one possible exception, the Complaint does not allege any fact suggesting that they acted under color of state law, as is required to state a claim under 42 U.S.C. § 1983. (Storm King Defs.' Mem. 14.) That one exception is not actionable under § 1983 as a matter of law.

A claim under 42 U.S.C. § 1983, which is the basis for Missere's ability to recover for the alleged constitutional violations, "requires that a defendant have acted 'under color of law.'" *Porter–McWilliams v. Anderson*, No. 07–CV–407, 2007 WL 4276801, at *2 (S.D.N.Y. Dec. 3, 2007) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see also Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136–37 (2d Cir.1999) ("To prevail on a § 1983 claim, a plaintiff must prove that the challenged conduct was attributable at least in part to a person acting under color of state law, and that the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States."). As the Second Circuit has explained:

> [f]or the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)). Missere only argues that the "joint action" test is applicable here. (Pl.'s Mem. 29.) To state a § 1983 claim on this theory, a plaintiff must plead facts supporting a plausible inference that the private party "acted in concert with the state actor to commit an unconstitutional act," i.e., the private defendant was "a willful participant in joint activity with the State or its agents." *Ciambriello v.*

*Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (internal quotation marks omitted); *see also Algarin v. N.Y.C. Dep't of Corr.,* No. 06–CV–508, 2006 WL 1379605, at *1 (S.D.N.Y. May 19, 2006) (same). "The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the [state actor]." *Forbes v. City of New York,* No. 05–CV–7331, 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (internal quotation marks omitted).

 The Complaint alleges that the Storm King Defendants did the following: first, they lobbied and pressured Village officials to find that Missere's properties were not within the CBS Zone, and they initiated the ZBA appeal that led to the Board's decision that 9 River Ave. was outside the CBS Zone. (Compl. ¶¶ 17–19, 22–23.) Second, they submitted deficient applications for building permits and certificates of occupancy which were approved by the Village. (*Id.* ¶¶ 37–42.) Third, after his initial permit to build the fence was voided on August 31, 2007, Yannone "contacted [Defendant Mayor] Gross for the purposes of having [Gross] intervene on behalf of Yannone with the Code Enforcement Officer." (*Id.* ¶ 47.) Gross allegedly told Yannone how to write his new application so that it would be granted, which it was. (*Id.* ¶¶ 48–51.) The Complaint alleges that "[a]ll the named defendants" have failed to take down the fence. (*Id.* ¶ 55.) Fourth, the Storm King Defendants have received favorable treatment from the Village despite alleged violations of the zoning code. (*Id.* ¶¶ 57–60.)

 Even accepting these allegations as true, as a matter of law most do not amount to the "joint action" necessary for the Storm King Defendants to be held liable under § 1983. First, it is well established that "[a] private party does not act under color of state law when [he] merely elicits but does not join in an exercise of official state authority." *Serbalik v. Gray,* 27 F.Supp.2d 127, 131 (N.D.N.Y.1998) (internal quotation marks omitted) (holding that § 1983 plaintiff had not demonstrated state action in suit against private party where defendant complained to town authorities about plaintiff's actions, resulting in alleged violations of plaintiff's property rights by the town); *see also Dunton v. Suffolk Cnty.,* 729 F.2d 903, 911 (2d Cir. 1984) (holding that federal claims alleged against private actor who filed criminal complaint against plaintiff were "patently meritless and insubstantial"); *Tarkowski v. Robert Bartlett Realty Co.,* 644 F.2d 1204, 1208 (7th Cir.1980) ("A private person does not conspire with a state official merely by invoking an exercise of the state official's authority."). The Complaint alleges no more than that the Storm King Defendants sought to invoke the Village's regulatory apparatus to defeat Missere's applications. Without more, this is not joint action. *See, e.g., Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) ("Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."); *Dahlberg v. Becker,* 748 F.2d 85, 93 (2d Cir.1984) ("[T]he mere invocation by defendants of New York's legal procedures does not constitute joint participation so as to satisfy the statutory requirement under § 1983 that there be a state actor."); *Chapel Farm Estates, Inc. v. Moerdler,* No. 01–CV–3601, 2003 WL 21998964, at *6 (S.D.N.Y. Aug. 22, 2003) (holding that private homeowners' association, which lobbied public entities to deny plaintiffs land use applications, did not act under color of state law); *see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 196, 123 S.Ct. 1389, 155 L.Ed.2d 349 (2003) ("[S]tatements made by private individuals in the course of a citizen-driven

petition drive ... do not, in and of themselves, constitute state action for the purposes of the Fourteenth Amendment.").

 Similarly, "[s]ection 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who act under color of law." *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 273 (2d Cir.1999). Thus even if the Village Defendants granted Storm King's applications and thereby permitted Storm King to take actions that violated the Village's zoning code, that cannot constitute "joint action" absent facts showing a "plan, prearrangement, conspiracy, custom, or policy." *Id.* at 272 (internal quotation marks omitted). *See Cassaboon v. Town of Somers,* 359 F.Supp.2d 320, 326 (S.D.N.Y.2005) (holding that private property owners who merely applied for and were awarded a permit from town were not state actors, even though permit allegedly resulted in infringement of plaintiffs property rights). It might be *conceivable* that the Storm King and Village Defendants "acted in concert" in taking these actions—if, for instance, Storm King submitted its deficient applications according to a pre-arranged conspiracy with the Village, which had agreed in advance to approve them—but the Complaint alleges no *facts* whatsoever that would support such

an inference, and it cannot survive on mere speculation. "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (per curiam); *see also Ciambriello,* 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity."); *cf. Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (holding that a complaint alleging an antitrust conspiracy under § 1 of the Sherman Act must contain "enough factual matter (taken as true) to suggest that an agreement was made").

 There is only one factual allegation that even arguably could support an inference of joint action: the Complaint states that, after Yannone sought his help, the Mayor told Yannone to reapply for the building permit required to build the fence and to state that the application was for a "replacement" fence, thus allowing the permit to be issued without a site plan approval. (Compl. ¶¶ 47–50.) The Court will assume without deciding that this allegation could, viewed in the light most favorable to Missere, support an inference of joint activity between Yannone and the Village Defendants.[18] The allegation still

---

18. Of course, mere "[c]ommunications," even regular ones, "between a private and a state actor, without facts supporting a concerted effort or plan between the parties, are insufficient to make the private party a state actor." *Fisk v. Letterman,* 401 F.Supp.2d 362, 377 (S.D.N.Y.2005); *see also Morpurgo v. Inc. Vill. of Sag Harbor,* 697 F.Supp.2d 309, 338 (E.D.N.Y.2010) (same). As is made clear above, moreover, if all that actually happened was that Yannone asked the Mayor for help, that request alone would most likely not amount to state action, and it might also constitute protected activity for which the Storm King Defendants could claim immunity. *See Mosdos Chofetz Chaim, Inc. v. Vill. of*

*Wesley Hills,* 701 F.Supp.2d 568, 593–97 (S.D.N.Y.2010) (discussing applicability of *Noerr–Pennington* doctrine to civil rights actions); *cf. Holzemer v. City of Memphis,* 621 F.3d 512, 520–23 (6th Cir.2010) (holding that private business owner who requested assistance from city councilman engaged in protected activity under the Petition Clause); *Chapel Farm Estates,* 2003 WL 21998964, at *6 (noting that private actor's lobbying efforts not only were not state action under § 1983 but were constitutionally protected).

Absent an agreement between the Mayor and Yannone, state action under some other theory appears difficult to establish based on the Complaint's allegations. While there is

fails to establish state action for a different reason.

 In a § 1983 action, the plaintiff must also establish that the party acting under color of law *caused* the alleged deprivation of a federal right. *See* 42 U.S.C. § 1983 ("Every person who, under color of [law], subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable...."); *Hollman v. Cnty. of Suffolk*, No. 06–CV–3589, 2011 WL 280927, at *3 (E.D.N.Y. Jan. 27, 2011) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). All the

Storm King Defendants caused was the building of the fence. Even assuming they did this "under color of law" by reapplying for the building permit in a manner that would not require site plan approval, the building of the fence in and of itself did not deprive Missere of a federal right. Missere does not allege that the building of the fence itself deprived him of a protected property interest,[19] and while he alleges that the approval of the fence constituted an instance of selective enforcement (Compl. ¶¶ 52, 56), as discussed above this cannot be correct: it does not establish that *Missere* suffered differential treatment at the hands of the Village (after all, what fence was he denied?), only that Yan-

authority for the proposition that a private actor who acts pursuant to an *order* of a state actor does so under color of law, *see, e.g., Moore v. Williamsburg Reg'l Hosp.*, 560 F.3d 166, 179 (4th Cir.2009) ("The state is deemed responsible for the private entity's action if the private party acts [*inter alia*] at the state's specific behest." (internal quotation marks omitted)); *Tewksbury v. Dowling*, 169 F.Supp.2d 103, 110 (E.D.N.Y.2001) (private physician who accepted plaintiff for civil commitment upon the referral of a state actor could be liable under § 1983 on a joint action theory); *cf. Algarin*, 2006 WL 1379605, at *1 (mere allegation that defendant acted "at the behest" of a state actor was "far too conclusory to survive a motion to dismiss"), the Court has not found cases holding that a private actor who follows a mere *suggestion* or *recommendation* of a state actor acts under "color of law." Indeed, a plaintiff may establish a "close nexus between the State and the challenged action" when, among other things, it is shown that the State "has provided *such* significant encouragement, either overt or covert, that the choice *must in law be deemed to be that of the State.*" *United States v. Stein*, 541 F.3d 130, 146–47 (2d Cir.2008) (emphasis added) (internal quotation marks omitted). The "significant encouragement" in these cases appears to amount to an exercise of state coercion, if not in form than in effect. *See, e.g., Id.* at 147–48 (holding that private entity's adoption of policy to withhold attorneys' fees from employees accused of misconduct was effectively forced by Justice

Department's prosecution guidelines and, thus, constituted state action under a "joint action" and "close nexus" theory). That is not surprising, as the purpose of the "close nexus" requirement (and, indeed, the state action requirement itself) "is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (emphasis in original). The Court need not decide whether a private actor's decision to follow the recommendation of a state actor, without an agreement between them, can be "attributable to the State." *Stein*, 541 F.3d at 146.

19. Missere does allege that the fence interferes with his rights in certain easements. (Compl. ¶ 52.) These alleged rights are the subject of ongoing state litigation. (Dolan Aff. Exs. F, G (orders issued in *Missere v. Storm King Assocs., LLC*, No. 11029/07 (N.Y.Sup.Ct.) dated May 2008 and June 2009).) Missere does not base his due process claims on these easements, however, nor does the Complaint contain any facts demonstrating the outrageous and conscience-shocking government conduct that is actionable as a substantive due process violation. *Cf. Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir.2006) (holding that evidence showing at most "incorrect or ill-advised" infringement of plaintiffs' alleged easement did not amount to substantive due process violation).

none received a break. Missere has simply alleged no basis to turn a dispute with his neighbor about a fence between their properties into a federal case. All claims against the Storm King Defendants must therefore be dismissed on this independent ground.

### III. Conclusion

Missere's due process claims fail because they are unripe and because he does not allege deprivation of a constitutionally cognizable property interest. Missere's Equal Protection claims fail because he has not alleged that he was treated differently from a similarly situated individual, that the Village Defendants acted with malice or in bad faith, or that the Village Defendants lacked a rational basis for their actions. Finally, Missere has not alleged that the Storm King Defendants engaged in any conduct that is actionable under § 1983. The Court need not address the Defendants' remaining arguments, including that Mayor Gross is entitled to absolute or qualified immunity.

For these reasons, Defendants' motions to dismiss are granted in their entirety. The due process claims are dismissed with prejudice, and the Equal Protection claims are dismissed without prejudice. Plaintiff has thirty days to file an Amended Complaint consistent with this Opinion. The Clerk of Court is respectfully directed to terminate the pending motions. (Dkt. Nos. 30, 32.)

SO ORDERED.